No. 31,925

MYRTLE CHERRY, *Appellant,* v. JOHN R. HAYS (also known as JACK HAYS), *Appellee.*

(41 P. 2d 746)

Opinion filed March 9, 1935.

*Kenneth K. Cox,* of Wichita, for the appellant.

*C. H. Brooks, Willard Brooks, Howard T. Fleeson, F. W. Aley, Carl G. Tebbe* and *Wayne Coulson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff herein, Mrs. Myrtle Cherry, sued the defendant, John R. Hays, for damages for injuries sustained when an automobile in which plaintiff and defendant were riding was overturned through the fault of defendant.

It appears that the plaintiff, a working woman, resided with her sister, Mrs. Gladys Gibson, in an apartment situated beside an alley in Wichita. In the afternoon of June 6, 1931, plaintiff came home from her work and found her sister and this defendant in the apartment. The three indulged in the drinking of some "spiked" beer. Defendant gradually became loud, vulgar, and boisterous. Mrs. Gibson feared the neighbors would call the police. She asked plaintiff to drive them out for an airing. Defendant gave plaintiff the keys to his automobile and told her where to find it. Plaintiff got the car and drove it to the alley near her sister's apartment. Defendant and Mrs. Gibson got into the car and plaintiff drove it out of town and north to Newton, where the three persons dined together at a railway hotel. Defendant became boisterous and profane and knocked dishes off the table, so they left the hotel and started back to Wichita over the main highway. It had rained that day. A few

miles south of Newton the Hays' car, with the plaintiff at the wheel, was traveling at 35 miles an hour. A side road from the west led into the highway, on which a Ford car approached, but did not stop. Defendant grabbed the steering wheel. This caused plaintiff to lose control of the car; it swerved toward the east, where it ran into soft mud by the roadside and upset. Plaintiff was severely and variously injured.

In her petition plaintiff pleaded the material facts. The answer contained a general denial and a plea of contributory negligence—particularly in operating the car at a greater speed than reasonable under the circumstances. The answer also raised a question of law touching the sufficiency of plaintiff's petition.

Issues were joined on the allegations of fact; the legal question raised by the answer was ignored; and the cause was tried before a jury which returned a verdict for plaintiff in the sum of $1,000, and answered special questions as follows:

"1. Was the defendant in an intoxicated condition when the parties entered the car at Newton for the return trip to Wichita? A. Slightly intoxicated.

"2. If you answer question 1 in the affirmative, state whether plaintiff knew defendant was intoxicated at this time. A. Yes.

"3. Did the plaintiff slow down to 15 miles per hour for the intersection just prior to the accident? A. No.

"4. If you answer question 3 in the negative, state whether the accident would have occurred if she had slowed down to 15 miles per hour. A. No.

"6. Did the Ford roadster approaching from the west stop before it turned on the highway in front of the car driven by plaintiff? A. No.

"7. If you answer question 6 in the negative, state whether the accident would have occurred if the Ford had stopped. A. No.

"8. Do you find that the defendant was guilty of any act or acts of negligence? A. Yes.

"9. If you answer question 8 in the affirmative, state what that act or acts of negligence was. A. Interfering with steering wheel.

"10. Where was the defendant sitting in the car at the time of the accident? A. Center."

Defendant moved for judgment on the special findings regardless of the general verdict. This motion was sustained and judgment was rendered accordingly.

Plaintiff appeals, urging various errors, the first of which is a general complaint against the trial court's ruling on the motion for judgment on the special findings. She argues that they are not inconsistent with the general verdict. However, if any legal signifi-

cance should be attached to special findings 3 and 4 it is not readily discernible how those findings harmonize with the general verdict, since the jury was properly instructed on the subject of contributory negligence; and special findings 3 and 4 seem to establish that controverted issue against the plaintiff and in favor of defendant. Another consideration which tends to make out a case of contributory negligence was the fact that plaintiff went auto riding with a man so boisterously drunk, according to her own testimony, that there was a possibility that the police would be called to take charge of him, and his boisterous misbehaving was still so violent at Newton that he knocked the dishes off the table and "cursed and swore" and "made things very embarrassing for my sister and I both." In view of such evidence, findings 1 and 2 are not wholly without significance on the question of contributory negligence.

It is next argued that question No. 4 should not have been submitted to the jury. The objection is that it invited the jury to indulge in conjecture. The question might be criticized on the ground that it did not seek to elicit an evidential fact but merely a conclusion, but no such objection was made to it. Plaintiff's objection to both questions 3 and 4 was that the statutory provision requiring automobile drivers to reduce speed to 15 miles per hour at intersecting roads did not apply to this sort of an action—but merely to collision cases. This point leads to the next error urged, and which relates to an instruction which quoted the legislative declaration in R. S. 1933 Supp. 8-122, requiring motorists to reduce their speed to a rate not exceeding 15 miles per hour on approaching an intersection of highways and not to exceed that speed until it is passed. Plaintiff contends that this statutory provision is designed to avert collisions of vehicles. As applied to this particular case, it is rather obvious—or the jury might so conclude—that there was a fair chance of collision with the Ford, and if plaintiff had reduced the speed of the car to 15 miles per hour the interference of the defendant with the steering wheel would not have happened or would not have caused the sudden swerving of the car to the slippery roadside with the consequences which followed. It will be noted that in special finding No. 9 the jury exculpated defendant of the alleged meddling with the gasoline control. His only wrongdoing found by the jury consisted of his interfering with the steering wheel, a direct consequence of disregard of the traffic regulation.

Another argument is advanced to support the contention that the statute did not require plaintiff to reduce speed at the intersection. This is based on the fact that she was driving on a state and federal highway where the entrances of intersecting roads are required to be marked with signs directing traffic to come to a full stop. (R. S. 1933 Supp. 8-122.) Counsel for appellant deduce that this provision of statute impliedly relieves motorists on the main highways from reducing speed at intersections where the secondary, intersecting roads are marked with stop signs. The case of *Keir v. Trager*, 134 Kan. 505, 7 P. 2d 49, is cited in support of this argument. But that case does not so decide. It merely holds that the motorist on the main highway is not negligent in assuming that the driver of a vehicle coming into the main highway from a secondary road will stop in obedience to the sign. The cited case also holds inferentially that under such circumstances the question whether the motorist on the main highway would be guilty of contributory negligence in failing to slacken speed, as the statute directs, would be one for the jury to settle and should not be decided as a matter of law. The statutory provision to avert or reduce accidents is two-fold. The motorist on the main highway should slacken speed as he approaches intersections, and the motorist about to enter the main highway from secondary, intersecting roads should come to a full stop. If these two statutory requirements had been observed in this case this accident would not have happened. We do not ignore the fact that plaintiff testified that she did slacken speed as she approached the intersection and that defendant cursed her for so doing; and that he interfered with the gasoline control as well as the steering wheel. But the jury disbelieved this testimony. (Finding 3; *Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590; *Cole v. Cook*, 137 Kan. 250, 253, 20 P. 2d 483.) It is also argued for plaintiff that the accident did not occur at the intersection. This point is too subtle. The negligent act of defendant and the contributory negligence of plaintiff were both set in motion at or prior to the time they reached the intersection although the ultimate consequences, the overturning of the automobile, occurred at some distance beyond it.

Some other arguments are urged against the judgment but they present nothing to warrant further discussion.

The judgment is affirmed.