No. 49,529

JACK M. GLEICHENHAUS, *Appellant,* v. BERT C. CARLYLE and CENTRAL PRESS-PICTORIAL, INC., *Appellees.*

(597 P.2d 611)

Opinion filed July 14, 1979.

*Fred W. Phelps, Sr.,* of Fred W. Phelps—Chartered, of Topeka, argued the cause, and *Fred W. Phelps, Jr.,* of the same firm was with him on the briefs for the appellant.

*Jerry R. Palmer,* of Stumbo, Stumbo, Palmer, McCallister & Buening, of Topeka, was on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, C.J.: This court granted review of the judgment of the Court of Appeals in *Gleichenhaus v. Carlyle,* 3 Kan. App. 2d 146, 591 P.2d 635 (1979), affirming the trial court's entry of summary judgment in a libel action.

The facts of this defamation case are fully stated in the Court of Appeals opinion. The Court of Appeals held that although the trial court may have erred in limiting discovery, the error, if any, was harmless, and on the undisputed facts the publications were not actionable and the trial court correctly rendered summary judgment for the defendant.

In this court the plaintiff-appellant contends the Court of Appeals erred in misstating important facts; in finding the appellant was a public figure under the facts; in upholding the trial court which granted the defendant-appellee's motion for summary judgment; and in sustaining a denial of discovery.

The record reflects the appellee does not dispute he published comments about the appellant. The appellant contends the Court of Appeals erroneously determined he contributed to the mayoral campaign and received appraisal jobs in return for that contribution. He bases this argument on syllabus paragraph four of the opinion which provides:

"One who makes a substantial contribution to a political candidate becomes a

public figure for the limited purpose of that issue *if that contributor subsequently receives a contract,* other than on a competitive bid basis, through either the office of the recipient or some governmental agency over which the recipient exerts considerable influence." (Emphasis added.)

The appellant further claims the Court of Appeals erred in finding that he was a public figure in the context of this factual background.

Careful reading of the record reveals without question the appellant had received appointment as an appraiser; he had received the stated sum of money in the disputed articles for his appraisal work; and he did make contributions to the mayor's reelection campaign. Thus, he was related to the mayor by appointment and contribution.

The appellant argues, however, there was no evidence that he previously contributed to the campaign and subsequently received the contracts; instead, he states the evidence revealed he contributed to the reelection campaign *after* he had received the appraisal contracts. We disagree.

Two of the advertisements in question provide:

"Jack Gleichenhaus got, in return for his donation to McCormick's campaign; some very nice real estate APPRAISAL CONTRACTS, drawing a total of $10,950 in fees from the city. Many were thrown out by courts."

The record is undisputed the appellant did not bid on the contracts. No misstatement of the facts occurred here. Moreover, the law in this area is well-stated in the Court of Appeals opinion. We note the Supreme Court of the United States has recently addressed the question of who is a public figure in *Wolston v. Reader's Digest Association, Inc., et al.,* _____ U.S. _____, 61 L.Ed.2d 450, 99 S.Ct. 2701 (1979) and *Hutchinson v. Proxmire, et al.,* 433 U.S. _____, 61 L.Ed.2d 411, 99 S.Ct. 2675 (1979). We do not view the narrow definition of public figure in those cases as conflicting with the definition here. The real harm sought to be controlled is the danger of political payoffs. We hold the trial court correctly determined that for the limited area of campaign contribution to political campaigns and reciprocating contract advantages, the appellant was a public figure. Thus, the court did not err in its statement of the facts or in its application of the law to the facts.

The appellant next contends the trial court erred in sustaining the motion for summary judgment.

The classification of appellant as a public figure changed his burden from proving simple negligence to proving actual malice. See *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 11 L.Ed.2d 686, 84 S.Ct. 710 (1964). The comments published by the appellee were covered by a limited privilege.

Certain general rules are applicable. Summary judgment should not be entered if there remain genuine issues of material fact. *Welch v. Young,* 225 Kan. 189, Syl. ¶ 2, 589 P.2d 567 (1979) and cases cited therein. In considering a motion for summary judgment a trial court must give to a litigant against whom judgment is sought the benefit of all inferences that may be drawn from the admitted facts under consideration. *Welch v. Young,* 225 Kan. at 192; *Bowen v. Westerhaus,* 224 Kan. 42, Syl. ¶ 1, 578 P.2d 1102 (1978) and cases cited therein. A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties. *Bowen v. Westerhaus,* 224 Kan. 42, Syl. ¶ 2.

Here the Court of Appeals correctly noted summary judgments should be employed with caution in defamation cases. It then held that where the facts are not in dispute, the question of malice is a question of law for the court and when there is a complete lack of evidence or when the evidence shows no liability as a matter of law, it is the trial court's function to enter summary judgment.

Contrary to the findings of the trial court we cannot say the evidence in this case shows no liability as a matter of law. In one of two affidavits of Kenneth Elder submitted by the appellant, Mr. Elder explained that the alleged appraisals were not thrown out by the court; that protests were lodged; and that property owners would not agree to accept them. Condemnation necessarily followed. Apparently the appellee was advised of these facts before he published. This evidence is sufficient to warrant a finding that he published in reckless disregard of the truth, and his limited privilege was violated.

While we have no quarrel with the rules of law concerning privilege and malice stated by the Court of Appeals, their application to the case at bar is misplaced. Clearly a sufficient showing of actual malice to allow the cause of action to proceed to trial had been established, and the lower court erred in granting the

motion for summary judgment. The case must be remanded for further proceedings on this point.

Finally, the appellant contends the trial court erred in sustaining a denial of discovery. The appellant sought to discover information concerning prior articles and editorials written by the appellee in order to establish a pattern for reckless reporting. None of the articles mentioned the appellant. The trial court concluded the information sought was not relevant and further determined it could not lead to relevant evidence. We disagree.

The United States Supreme Court recently discussed the discovery process in defamation cases in *Herbert v. Lando,* 441 U.S. 153, 60 L.Ed.2d 115, 99 S.Ct. 1635 (1979). There the Supreme Court stated:

"The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials. [Citations omitted.] But the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they 'be construed to secure the just, *speedy,* and *inexpensive* determination of every action.' (Emphasis added.) To this end, the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . .' Fed Rule Civ Proc 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." (441 U.S. at 177.)

We have no quarrel with the *Lando* rule; however, its application to the case at bar would be misplaced. This court has often stated the scope of discovery is to be liberally construed so as to provide the parties with information essential to litigation in order to insure the parties a fair trial. The scope of relevancy in a discovery proceeding is broader than the scope of relevancy at trial. Relevancy includes information which may be useful in preparation for trial. A request for discovery would be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the lawsuit. *In re Pennington,* 224 Kan. 573, 576-7, 581 P.2d 812 (1978), *cert. denied* 440 U.S. 929 (1979); see also *Fields v. Stauffer Publications, Inc.,* 2 Kan. App. 2d 323, 326, 578 P.2d 1138, *rev. denied* 224 Kan. clxxxvii (1978). Here the discovery was confined to the deposition of *a party* to the action.

It was necessary for the appellant to show actual malice or reckless disregard for falsity in public comments before the

appellee could be found liable for defamation. Thus, the appellee's malicious intent was a central issue to the case. The requested information was clearly relevant to the primary issue and could have led to other evidence. The answers to the interrogatories would have been competent evidence at trial to establish a frame of mind on the part of the appellee of malice toward the appellant. Therefore in an action for libel against a newspaper, the publication of similar libels on other persons may be discoverable as relevant evidence. The showing of a reckless indifference to the rights and reputations of others may furnish a basis for an inference the publication in controversy was malicious. See generally 50 Am. Jur. 2d, Libel and Slander § 455, pp. 980-81; 53 C.J.S., Libel and Slander § 214.

Accordingly, the trial court erred in limiting the appellant's discovery.

The summary judgment of the trial court is reversed and the case is remanded for further proceedings with directions to permit the discovery to proceed.